Harold Tessler, J.
In this article 78 proceeding, petitioner seeks to annul a determination by the City Rent Administrator, dated January 7, 1963, which recontrolled certain housing accommodations.
Petitioner is the owner-landlord of premises known as 171-39-107th Avenue, Jamaica, a two-family house consisting of two five-room apartments. This proceeding is concerned with the first-floor apartment rented by the petitioner to Mr. and Mrs. Willie Earquhart under a lease for a term of two years, commencing July 1, 1961 and ending June 30, 1963, at a monthly rental of $125. Said lease contained a paragraph “ 14th ” permitting the tenant to have no more “ than two roomers ”. Paragraph 6 ‘ 3rd ’ ’ of said lease prohibited the tenant from under-letting any part of the premises without the landlord’s consent in writing.
Some time after the commencement of the tenants ’ occupancy (the exact date not appearing in the record), they sublet two of the five rooms, with the privilege of sharing the kitchen and bath, to a husband and wife, for $22.50 per week. The latter filed a complaint with the local rent office, as a result of which the subtenants ’ rent was reduced to $6 per week. Subsequently, the order of January 7, 1963, was issued recontrolling the tenants’ apartment and fixing its maximum rent at the controlled rent of $34.50 per month. This determination was made by the Local Administrator pursuant to section 2 (subd. f, par. [11]) of the City Rent, Eviction and Rehabilitation Regulations. In her denial of the landlord’s protest and as stated in her order and opinion issued September 10,1963, the Administrator based said recontrol upon the fact that the subject accommodations were being occupied by two families, the prime tenants and the subtenants, and the further fact that the latter occupied two unfurnished rooms and shared the kitchen and bath. Said the Administrator: ‘‘ Under these circumstances the Administrator is of the opinion and finds that the subject accommodation is occupied for other than single family occupancy and is therefore subject to control under the provisions of Section 2f(ll) of the Rent Regulations. * * * that the occupancy by the tenant of unfurnished accommodations renders the entire apartment ineligible for decontrol under the provisions of Section 2f(5) of the Regulations.”
It is conceded by the respondent that the subject apartment, being part of a two-family house, was legally decontrolled prior *954 to July 1,1961 (regulations, § 2, subd. f, par. [5]). It is undisputed that the tenants were permitted by the terms of the lease agreement to sublet to one or two roomers (par. “14th”). “ Roomer ” is defined as follows: A lodger, one who rents a room or rooms in a house. In the general and accepted usage, a roomer is one who occupies hired quarters in another’s home without housekeeping (kitchen and cooking). It is self-evident that the subletting privilege to one or two roomers given to the tenants was not such as to intend or contemplate their renting to a family with housekeeping.
The unilateral act of the tenants in letting to the subtenants, consisting of a family (man and wife), with kitchen and bath privileges, was clearly in violation of both paragraphs “ 3rd ” and “ 14th ” of the lease, thereby giving the landlord the legal right to commence an eviction proceeding against the tenants. Such a proceeding was sought to be instituted by notice, dated November 9, 1962, prior to any notice to him of the Local Bent Administrator’s proceedings, commenced December 4, 1962. There is nothing whatsoever in the record to indicate that the landlord had any knowledge or reason to know of the housekeeping subletting prior thereto. There is not an iota of proof in the record to indicate that the housekeeping subletting and resulting dual-family occupancy was in any way caused, encouraged or consented to — directly or indirectly — by the landlord. Although it is undoubtedly true — in fact, it may well be implied by the provisions of paragraph “ 14th ” of the lease — that the landlord did encourage the tenants to take in roomers, this can only be construed as the giving of consent or encouragement to have roomers for nonhouscheeping occupancy. To assume otherwise, as has been done here by the respondent, is contrary to that which is in the record and hence is arbitrary and capricious.
The Administrator in her order and opinion of September 10, 1963 “finds that the landlord’s contention that its alleged lack of knowledge of the subletting should not result in a recontrol of the subject apartment is without merit. This fact, if so, has no bearing and is not determinative of the issue herein. The actual manner of the occupancy and not the landlord’s knowledge or lack of knowledge is determinative of the issue of recontrol under Section 2f(ll) of the Rent Regulations.”
I cannot but disagree with this finding. Assuming the landlord in no wise had knowledge o,r gave its consent to the housekeeping subletting, and the record is barren of any proof to the contrary, the Administrator reaches the entirely illogical result whereby the landlord is penalized and the tenants enriched by *955 the latters’ willful and unauthorized violation of their lease agreement. It hardly needs much discussion to realize that such a result encourages and permits these tenants and others similarly situated to enter into a collusive arrangement with a subtenant to the end that the tenants would obtain the benefit of a controlled rent because of their own wrongdoing, as has happened here. It is apparent that the landlord herein has been deprived of its legal right to decontrol and its benefits to the unjust enrichment of the tenants — and solely by reason of the latters’ wrongdoing.
The determination of the Administrator is contrary to the record and is thus illegal, arbitrary and capricious. Accordingly, the order of the Administrator, dated September 10, 1963 and that of the Local Rent Administrator, dated January 7, 1963, are declared null and void. The respondent herein is directed to issue an order declaring the subject housing accommodations to be decontrolled pursuant to section 2 (subd. f, par. [11]) of the City Rent, Eviction and Rehabilitation Regulations.